UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAMLESH BANGA,<br><br>            Plaintiff,<br><br>       v.<br><br>AMERIPRISE AUTO HOME INSURANCE AGENCY, et al.,<br><br>            Defendants. | No.  2:18-cv-01072 MCE AC<br><br><br>ORDER |

　　　　This matter is before the court on plaintiff's motion for discovery, filed concurrently with the accompanying joint statement. ECF No. 114. Plaintiff requests an order overruling defendant Ameriprise's objection to the interrogatories 1- 25 in her second-served set of interrogatories, and an order for Ameriprise to produce all responsive documents to Request for Production Nos. 31 through 37.  ECF No. 114 at 5.

　　　　Plaintiff simultaneously filed a motion to exceed the page limit (ECF No. 115), which the court will GRANT in the interest of issuing a ruling on the merits.  In the future, such requests should be made in advance.  The court notes that plaintiff's motion was filed on the final day to file a discovery related motion (ECF No. 91).  Thus, though the parties may continue engaging in discovery with one another, this is the final order this court will issue on discovery disputes in this case.

1

**I.     Relevant Background**

This action stems from a dispute over insurance coverage for alleged water damage to plaintiff's home as a result of a windstorm on January 18, 2016. Revised Third Amended Complaint ("RTAC"), ECF No. 67-3 at 1. Plaintiff's operative RTAC alleges, in relevant part, as follows.

On September 16, 2010, plaintiff purchased a homeowner's insurance policy from Ameriprise, with the issuing the Policy No BH00013346. ECF No. 67-3 at 4. On January 18, 2016, as a result of high windstorm, the roof of plaintiff's house was damaged, causing leakage that further damaged the interior walls and vaulted ceiling of the house. Id. Plaintiff reported the incident to Ameriprise and made a claim under her homeowner's insurance policy for damages. Id. Defendants assigned to this insurance loss the claim number 2117349BT600 and assigned employee David Hatch to investigate the loss and adjust the claim. Id. at 5.

On February 5, 2016, Mr. Hatch sent a letter that provided in pertinent part:

> "…We are prohibited by law from requiring you to have the property repaired by a specific individual or entity. You have the right to choose who repairs the damage to your property. If we recommend a repair individual or entity and you agree to use the recommended repair individual or entity, we shall cause the damaged property to be restored to no less than its condition prior to the loss and repaired in a manner which meets accepted trade standards for good and workmanlike construction at no additional cost to you, other than as stated in the policy or as otherwise allowed by these regulations…"
>
> Your home insurance policy states that legal action against us must be filed within one year from the date the loss or damage occurred."

Id. On February 10, 2016, Mr. Hatch sent an email advising Plaintiff to call CodeBlue at 1-866-544-5101 to inspect the damages to the ceilings and walls under the area where the roof leaked. Id. Plaintiff called CodeBlue, and February 29, 2016, CodeBlue inspected the damages and subsequently provided its findings to Defendants. Id. Defendants have not provided plaintiff with a copy of this report/estimate despite her multiple requests. Id.

On March 30, 2016, Mr. Hatch sent a letter informing plaintiff that he had retained his independent adjuster Eagle Adjusting Services, Inc. to make an estimation of the building damages. Id. On April 11, 2016, a Mr. Goldfarb inspected plaintiff's property and prepared an

estimate.[1]  Id.  On April 14, 2016, Mr. Hatch sent plaintiff a check of $1853.10 under the dwelling coverage of the policy to cover the cost of the Subject Property after deducting $2,000.  Id.  Plaintiff called Mr. Hatch and asked him to send a copy of the work order prepared by Mr. Goldfarb before she accepted the check.  Id.  On April 26, 2016 an Ameriprise adjuster sent plaintiff an e-mail stating that the Goldfarb report is a product of Ameriprise Auto and Home Insurance and they were not able to release it to insureds.  Id. at 6.

After a "lengthy ordeal," Ameriprise relented and sent plaintiff the work order prepared by Mr. Goldfarb.  Id.  Plaintiff contacted contractors, but none were willing to do the work for the price Mr. Goldfarb had quoted.  Id.  On July 21, 2016, plaintiff returned the check to Ameriprise, stating she could not find a contractor willing to complete the project for the quoted amount.  Id.  On January 13, 2017, plaintiff again contacted Ameriprise, asking for recommendations of contractors who would compete the work for the quoted amount.  Id.  Ameriprise did not respond.  Id. at 7.  On March 2, 2017 plaintiff sent another letter with the same request.  Id.  Ameriprise again did not respond.  Id.  Plaintiff sent another letter with the same request on April 14, 2017.  Id.  This time, Ameriprise responded offering an inspection of her property.  Id.  On April 26, 2017, plaintiff sent a response letter stating that she has already fixed the roof at her own expense, she was not claiming any additional damages and did not require another reinspection; she only wanted a general contractor who could do the work for $3,853.10 as specified in the Goldfarb report.  Id.

In August of 2017, plaintiff contacted Penny Pinching Construction Company ("PPCC"), to provide an estimate based on the work order prepared by Mr. Goldfarb.  Id.  On August 7, 2017, PPCC prepared an estimate, quoting $11,622.24.  Id.  Plaintiff sent the estimate to Ameriprise on August 12, 2017.  Id. at 8.  She received no response.  Id.  Plaintiff re-sent the estimate on September 13, 2017.  Id.  On September 13, 2017, plaintiff again sent the PPCC estimate to Ameriprise asking it to issue payment.  Id.  On September 22, 2017, Ameriprise responded that it required another inspection by Nexus Solutions before a check could issue.  Id.

---

[1] Roof damage was excluded from the estimate, but plaintiff repaired the roof at her own expense and roof damage is not at issue in this case.  See unmarked footnote at ECF No. 67-3 at 5.

3

On September 25, 2017, plaintiff wrote a letter informing Ameriprise that under her policy, she has a right to choose her contractor, and PPCC's work order was based on the estimate prepared by the adjuster retained by Ameriprise. Id. Ameriprise responded that the offer was final, and the matter could be resolved through arbitration. Id.

On October 23, 2017, plaintiff again sent Ameriprise a letter stating that a new inspection was not necessary because she was not claiming any additional damages. Id. Plaintiff requested the name of arbitrators so that she could choose one to resolve the matter. Id. at 9. Ameriprise did not respond. On January 10, 2018, plaintiff sent a letter by priority mail informing Ameriprise that on January 18, 2018, she planned to file a lawsuit unless Ameriprise would like to resolve the matter without court intervention. Ameriprise did not respond. Id.

Plaintiff sued Ameriprise in state court on January 18, 2018, and Ameriprise removed the action to this court. Id. IDS Property Casualty Insurance Company was added as a co-defendant. Id. Plaintiff brings multiple claims against defendant insurers, including breach of contract, bad faith, unfair & unlawful business practices under California's Unfair Competition Law, intentional misrepresentation, negligent misrepresentation, and intentional/negligent infliction of emotional distress. Id. at 10-21.

## II.     Interrogatory Responses

Plaintiff requests an order overruling Ameriprise's objection to interrogatories 1-25 in her second-served set of interrogatories. ECF No. 114 at 5. Defendant contends, among other things, that after filing her RTAC plaintiff served a second set of 25 interrogatories and a new set of requests for production, which included different requests than the set she initially served, thus exceeding the interrogatory question limit. ECF No. 114 at 9. The court agrees with defendant that interrogatories beyond the presumptive limit, served without leave of court, need not be answered.

Federal Rule 33(a)(1) states that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." The Advisory Committee Notes specify that the aim of the limitation "is

not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device." Adv. Comm. Notes to Rule 33 (1993 Amend.). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Under Rule 26(b)(2), the court "must limit the frequency or extent of discovery" if: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

In this case, plaintiff served Ameriprise with her First Set of Interrogatories on May 26, 2020. Exhibit A to ECF No. 114-1. On July 10, 2020, Ameriprise objected to each interrogatory on the ground that, "it is not a proper party to this lawsuit." Exhibit B to ECF No. 114-1. At this point, Ameriprise had not answered the First Amended Complaint. On November 24, 2020, the court accepted plaintiff's RTAC, and on December 8, 2020, defendants filed their Answer. On December 11, 2020, plaintiff served Ameriprise with a new set of interrogatories. Exhibit C to ECF No. 114-1. On January 14, 2021, Ameriprise provided its response and objected to each interrogatory on the ground that it exceeds the number of interrogatories permitted under Rule 33; it refused to provide any response except raising objections. Exhibit D to ECF No. 114-1.

Upon review of the first and second set of interrogatories served on defendant, it is apparent that the questions are different and that an excess number of interrogatories were issued. No leave of court was sought before serving the excess interrogatories. Defendant need not respond to interrogatories exceeding the presumptive limit. Plaintiff's motion is DENIED is relation to interrogatory responses.

### III.     Production of Documents

Plaintiff moves to compel further production from Ameriprise with respect to her RFP Nos. 31-37. The requests read as follows:

////

////

5

REQUEST FOR PRODUCTION NO. 31:

>A complete copy of the file(s) in this matter that are in possession, custody or control of defendant.

REQUEST FOR PRODUCTION NO. 32:

>Copies of any and all investigative files and any other documentary materials in your possession that support or relate to the allegations of the at-issue claim, subject to this action, excluding references to mental impressions, conclusions or opinions representing the value or merit of the claim or respecting strategy, tactics or privileged communications to and from counsel.

REQUEST FOR PRODUCTION NO. 33:

>Any and all writings in any manner relating to the claim, subject to this action, including any files maintained by defendant.

REQUEST FOR PRODUCTION NO. 34:

>Any and all records, documents, photographs, notes, memoranda or other materials concerning Plaintiff in the at-issue matter.

REQUEST FOR PRODUCTION NO. 35:

>Any and all contracts, agreement or other documents regarding any relationship between defendant and Plaintiff in this matter.

REQUEST FOR PRODUCTION NO. 36:

>Any and all exhibits defendant intends to introduce at trial.

REQUEST FOR PRODUCTION NO. 37:

>Any and all documents referred to or identified in your answers to the Interrogatories.

With respect to RFPs 31-35, defendant Ameriprise makes the same argument: that it has no responsive documents because any such documents belong to its corporate parent, IDS, which is a separate defendant and a separate legal entity, and that Ameriprise cannot be compelled to produce the documents of its corporate parent.  In this case, the court agrees.

In response to a request for production of documents under Rule 34, a party is to produce all relevant documents in its "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  A party cannot be ordered to produce documents it does not control such that it can obtain the documents on demand.  In re Citric Acid Litig., 191 F.3d 1090, 1108 (9th Cir. 1999).  It is established that "[a] corporation must produce documents possessed by a subsidiary that the parent corporation

owns or wholly controls." United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989).  The inverse of that proposition, however, is not so clear.  A subsidiary may be required to produce documents of the parent in some circumstances, such as when a court determines the document is indeed within the subsidiary's control.  For example, some "courts have determined that a subsidiary controls documents in possession of the parent company when counsel for the subsidiary has admitted access to documents in possession of the parent company or when the subsidiary can obtain documents in possession of the parent company in the ordinary course of business." Tessera, Inc. v. Micron Tech., Inc., No. C06-80024MISC-JW(PVT, 2006 WL 733498, at *4 (N.D. Cal. Mar. 22, 2006).

Defendant Ameriprise states unequivocally that it does not have control over the documents requested in RFPs 31-35.  Plaintiff's only counter to this assertion is that Rule 34 does not require the party to have actual possession of responsive documents and a party may be ordered to produce documents that are in the possession of third parties "if that party has the legal right to obtain the document or has control over the entity that has possession of the document." ECF No. 114 at 34-35.  Here, Ameriprise states that it is not in the position described by plaintiff; the documents at issue are in the possession of its parent company, which it does not have control over.  Because Ameriprise affirmatively represents that the documents at issue are not in its possession, custody or control, and because plaintiff has not shown otherwise, the motion to compel must be denied as to these RFPs.

With respect to RFP No. 36, the matter of trial exhibits is premature.  Defendant has indicated it intends to file a dispositive motion which may negate the need to exchange trial exhibits at all.  Defendant has agreed to exchange trial exhibits if and when it becomes necessary. ECF No. 114 at 43.

With respect to RFP No. 37, the matter is moot.  Defendant did not identify any exhibits in its second set of interrogatory answers and there are therefore no documents to produce.  ECF No. 114 at 43-44.

////

////

### IV.     Conclusion

Based on the foregoing, the court ORDERS plaintiff's motion to exceed the page limit (ECF No. 115) is GRANTED and the motion for discovery (ECF No. 114) is DENIED.  Pusruant to the scheduling order, the court will entertain no further discovery motions.

IT IS SO ORDERED.

DATED: February 22, 2021

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE