UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAMLESH BANGA,<br><br>Plaintiff,<br><br>v.<br><br>AMERIPRISE AUTO & HOME INSURANCE AGENCY and IDS PROPERTY CASUALTY INSURANCE COMPANY,<br><br>Defendants. | No. 2:18-cv-01072 MCE AC PS<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this action pro se and the case was accordingly referred to the undersigned by Local Rule 302(c)(21). Pending before the court are two motions for summary judgment: one from defendant Ameriprise Auto & Home Insurance Agency ("Ameriprise") (ECF No. 124) and one from defendant IDS Property Casualty Insurance Company ("IDS") (ECF No. 125). Plaintiff filed an opposition to each motion. ECF Nos. 134, 135. Defendants replied. ECF Nos. 139, 140. With the court's permission, plaintiff filed a surreply. ECF Nos. 157, 158. The court has considered all documents. For the reasons explained below, it is recommended that defendants' motions for summary judgment be GRANTED, that judgment be entered in favor of defendants, and this case be CLOSED.

////

# I. Complaint and Procedural Background

This action stems from a dispute over insurance coverage for alleged water damage to plaintiff's home caused by a windstorm on January 18, 2016. Revised Third Amended Complaint ("RTAC"), ECF No. 67-3 at 1. Plaintiff's operative RTAC alleges, in relevant part, as follows.

On September 16, 2010, plaintiff purchased a homeowner's insurance policy from Ameriprise[1], with the issuing Policy No. BH00013346. ECF No. 67-3 at 4. On January 18, 2016, as a result of a high windstorm, the roof of plaintiff's house was damaged, causing leakage that further damaged the interior walls and vaulted ceiling of the house. Id. Plaintiff reported the incident to Ameriprise and made a claim under her homeowner's insurance policy for damages. Id. Defendants assigned to this insurance loss the claim number 2117349BT600 and assigned employee David Hatch to investigate the loss and adjust the claim. Id. at 5.

On February 5, 2016, Mr. Hatch sent a letter that provided in pertinent part:

> "…We are prohibited by law from requiring you to have the property repaired by a specific individual or entity. You have the right to choose who repairs the damage to your property. If we recommend a repair individual or entity and you agree to use the recommended repair individual or entity, we shall cause the damaged property to be restored to no less than its condition prior to the loss and repaired in a manner which meets accepted trade standards for good and workmanlike construction at no additional cost to you, other than as stated in the policy or as otherwise allowed by these regulations…"
>
> Your home insurance policy states that legal action against us must be filed within one year from the date the loss or damage occurred."

Id. On February 10, 2016, Mr. Hatch sent an email advising Plaintiff to call CodeBlue at 1-866-544-5101 to inspect the damages to the ceilings and walls under the area where the roof leaked. Id. Plaintiff called CodeBlue, and February 29, 2016, CodeBlue inspected the damages and subsequently provided its findings to Defendants. Id. Defendants have not provided plaintiff with a copy of this report/estimate despite her multiple requests. Id.

////

---

[1] Plaintiff refers to the policy at issue as an "Ameriprise" policy in her RTAC. As discussed below in the undisputed facts section of this document, the policy at issue in this case was issued and adjusted by IDS Property Casualty Insurance Company ("IDS"), not by Ameriprise Auto & Home Insurance Agency, Inc. ECF No. 124-3 (Declaration of Jodi C. Helf).

On March 30, 2016, Mr. Hatch sent a letter informing plaintiff that he had retained his independent adjuster Eagle Adjusting Services, Inc. to make an estimation of the building damages. Id. On April 11, 2016, a Mr. Goldfarb inspected plaintiff's property and prepared an estimate.[2] Id. On April 14, 2016, Mr. Hatch sent plaintiff a check of $1853.10 under the dwelling coverage of the policy to cover the cost of the Subject Property after deducting $2,000. Id. Plaintiff called Mr. Hatch and asked him to send a copy of the work order prepared by Mr. Goldfarb before she accepted the check. Id. On April 26, 2016 an Ameriprise adjuster sent plaintiff an e-mail stating that the Goldfarb report is a product of Ameriprise Auto and Home Insurance and they were not able to release it to insureds. Id. at 6.

After a "lengthy ordeal," Ameriprise relented and sent plaintiff the work order prepared by Mr. Goldfarb. Id. Plaintiff contacted contractors, but none were willing to do the work for the price Mr. Goldfarb had quoted. Id. On July 21, 2016, plaintiff returned the check to Ameriprise, stating she could not find a contractor willing to complete the project for the quoted amount. Id. On January 13, 2017, plaintiff again contacted Ameriprise, asking for recommendations of contractors who would compete the work for the quoted amount. Id. Ameriprise did not respond. Id. at 7. On March 2, 2017 plaintiff sent another letter with the same request. Id. Ameriprise again did not respond. Id. Plaintiff sent another letter with the same request on April 14, 2017. Id. This time, Ameriprise responded offering an inspection of her property. Id. On April 26, 2017, plaintiff sent a response letter stating that she has already fixed the roof at her own expense, she was not claiming any additional damages and did not require another reinspection; she only wanted a general contractor who could do the work for $3,853.10 as specified in the Goldfarb report. Id.

In August of 2017, plaintiff contacted Penny Pinching Construction Company ("PPCC"), to provide an estimate based on the work order prepared by Mr. Goldfarb. Id. On August 7, 2017, PPCC prepared an estimate, quoting $11,622.24. Id. Plaintiff sent the estimate to Ameriprise on August 12, 2017. Id. at 8. She received no response. Id. Plaintiff re-sent the

---

[2] Roof damage was excluded from the estimate, but plaintiff repaired the roof at her own expense and roof damage is not at issue in this case. See unmarked footnote at ECF No. 67-3 at 5.

estimate on September 13, 2017.  Id.  On September 13, 2017, plaintiff again sent the PPCC estimate to Ameriprise asking it to issue payment.  Id.  On September 22, 2017, Ameriprise responded that it required another inspection by Nexus Solutions before a check could issue.  Id.  On September 25, 2017, plaintiff wrote a letter informing Ameriprise that under her policy, she has a right to choose her contractor, and PPCC's work order was based on the estimate prepared by the adjuster retained by Ameriprise.  Id.  Ameriprise responded that the offer was final, and the matter could be resolved through arbitration.  Id.

On October 23, 2017, plaintiff again sent Ameriprise a letter stating that a new inspection was not necessary because she was not claiming any additional damages.  Id.  Plaintiff requested the name of arbitrators so that she could choose one to resolve the matter. Id. at 9.  Ameriprise did not respond.  On January 10, 2018, plaintiff sent a letter by priority mail informing Ameriprise that on January 18, 2018, she planned to file a lawsuit unless Ameriprise would like to resolve the matter without court intervention.  Ameriprise did not respond.  Id.

Plaintiff sued Ameriprise in state court on January 18, 2018, and Ameriprise removed the action to this court based upon diversity of citizenship (28 U.S.C. § 1332).  Id.  IDS Property Casualty Insurance Company was added as a co-defendant.  Id.  Plaintiff brings multiple claims against defendant insurers, including breach of contract, bad faith, unfair & unlawful business practices under California's Unfair Competition Law, intentional misrepresentation, negligent misrepresentation, and intentional/negligent infliction of emotional distress.  Id. at 10-21.  Discovery in this case concluded in March of 2021.  ECF Nos. 91, 117.  Now before the court are motions for summary judgment from both defendants.  ECF Nos. 124, 125.

## II.     Standard for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v.

1  Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).  Thus, the "purpose of summary judgment is to
2  pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
3  trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).
4      "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
5  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls
6  v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is
7  the opposing party's obligation to produce a factual predicate from which the inference may be
8  drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to
9  demonstrate a genuine issue, the opposing party "must do more than simply show that there is
10  some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations
11  omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the
12  non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391
13  U.S. at 289).

### III. Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.  The statement of undisputed facts containing defendant's statement and plaintiff's opposition is located at ECF No. 134-2.  An additional statement of undisputed facts detailing additional facts plaintiff submitted and defendant's responses is located at ECF No. 140-3.[3]

IDS Property Casualty Insurance Company ("IDS") issued policy number BH00013346, in force from October 30, 2015 to October 30, 2016, to Kamlesh Banga ("Banga") and Madan L. Banga (the "Policy").  Declaration of Anne Glenn-Elias in Support of IDS Property Casualty Insurance Company's Motion for Summary Judgment or, in the alternative, Summary Adjudication ("Elias Decl.") (ECF No. 125-3) ¶2, Ex. A (the "IDS Policy"); IDS Policy at IDS_PROD_000322 – 349.  In the IDS Policy, IDS agreed "to provide insurance subject to all the

---

[3] Defendant also filed various objections to plaintiff's submitted evidence.  ECF No. 140-4.  Resolution of the summary judgment motions does not require rulings on these objections.

terms of this policy" to Banga.  IDS Policy at IDS_PROD_000328 ("We agree with you, in return for your premium payment, to provide insurance subject to all the terms of this policy. The coverages provided, the limits of our liability and the premiums are shown in the declarations of this policy.")  Defendant Ameriprise markets insurance policies on behalf of other companies and the name "Ameriprise" was present in some communications about the Policy, but it was not a party to the Policy and did not participate in adjusting Banga's claims.  ECF No. at 124-1 at 9; Declaration of Jodi C. Helf (ECF No. 124-3); ECF No. 125-3 at 15 (the Policy definition section stating: "We, us, and our means IDS Property Casualty Insurance Company.")

The IDS Policy contains a "Suits against us" provision that states, "We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs."  IDS Policy at IDS_PROD_000335.  The IDS Policy contains a provision titled "what to do in case of loss" that states, "If a covered loss occurs, the insured person must … 5. exhibit the damaged property to us or our representative, as often as may be reasonably required."  IDS Policy at IDS_PROD_000333.  Banga's residence sustained water damage on or about January 18, 2016.  Revised Third Amended Complaint ("RTAC"), ECF 67-3, at ¶¶1, 13 ("On January 18, 2016, as a result of high windstorm, the roof of Plaintiff's house was damaged causing leakage that further damaged the interior walls and vaulted ceiling of the house").  Banga discovered the water damage to her residence on or about February 5, 2016.  Deposition of Kamlesh Banga (ECF No. 125-4 at 20-50) ("Banga Dep.") at 65:14-66:2.  Banga reported the loss to IDS on February 5, 2016.  Elias Decl. at ¶3, Ex. B (the "Claim Notes") at IDS_PROD_000249-52.

Eagle Adjusting ("Eagle") prepared a report dated April 13, 2016 evaluating the scope of work required to repair the water damage to Banga's residence and estimating the cost of those repairs as $3,853.10 (the "Eagle Report").  Elias Decl., at ¶7, Exhibit D.  IDS attempted three times to pay Banga the cost to repair the damage to her residence based on Eagle's estimate, minus the IDS Policy's deductible, but Banga returned the checks because IDS refused to provide a copy of the Eagle Adjusting Report.  Elias Decl., at ¶8, Exhibit E.

////

IDS offered to have Nexxus Solutions, which provides licensed, bonded, and insured contractors, re-inspect the damage to Banga's residence and prepare a second estimate of the scope of and cost to repair the water damage. Elias Decl. ¶¶10-11, Exhibit G.; ¶26, Exhibit U. IDS informed Banga that, if she refused to allow re-inspection of the damage to her residence, IDS would consider the Claim closed. Elias Decl. ¶13, Exhibit I ("If you are declining a re-inspection then we will consider the claim concluded."). Banga does not dispute, except on the grounds of relevance, that she understood as of April 26, 2016 that, if she refused to allow re-inspection of the damage to her residence, IDS would consider the Claim closed. Banga Dep., at 100:17-102:19; ECF No. 134-2 at 10. Banga refused to allow re-inspection of the damage to her residence because she wanted to see the full report from Eagle first and believed her insurer was engaging in "estimate shopping." Banga Dep. at 100:17-102:19; 108:3-6 (Q. So you refused the re-inspection at that time, correct? A: Yes, because the roof at that time I decided I have to repair the roof by myself and I was looking to have the roof to be repaired and I was contacting people.") IDS closed the Claim on April 26, 2016 due to Banga's refusal to allow reinspection of the damage to her residence. Elias Decl. ¶¶29-30; Claim Notes (Exhibit B) at IDS_PROD_000225.

Banga filed this lawsuit on January 18, 2018, and it was removed to this court on April 30, 2018. ECF Nos. 1, 1-1 at 4. Banga testified that the alleged breach of the IDS Policy caused her emotional distress. Banga Dep., at 45:7-23. Banga testified that her emotional distress includes embarrassment about damage remaining to her home, feeling "bad," and unpleasant feelings. Banga Dep., at 45:24-46:14. Banga denied that her alleged emotional distress has manifested in physical symptoms. Banga Dep., at 145:24-146:1 ("Q. Do you have any physical symptoms related to your emotional distress? A. No, I'm not claiming physical symptoms."). Banga has not consulted with any physician regarding her alleged emotional distress. Banga Dep., at 146:16-18.

### IV.   Analysis

Plaintiff's RTAC includes six causes of action: (1) breach of contract; (2) bad faith/tortious breach of insurance contract; (3) unfair and unlawful business practices under California's Unfair Competition Law (UCL), codified at California Business and Professions

Code §17200, et seq.; (4) intentional misrepresentation; (5) negligent misrepresentation; and (6) intentional/negligent infliction of emotional distress. ECF No. 67-3. Defendants Ameriprise and IDS each move for summary judgment on all claims. ECF Nos. 124, 125. Defendant IDS moves for summary judgment on the grounds that plaintiff's RTAC is time-barred in its entirety, and that her claims are meritless. ECF No. 125. Defendant Ameriprise moves for summary judgment on grounds that it is not a party to the Policy and that plaintiff's claims are meritless. ECF No. 124. Because the undersigned finds this case is time-barred in its entirety, as to all claims and all defendants, no other arguments are addressed herein.

The Policy contains an express contractual limitations period of one year. IDS_PROD_000335. The one-year suit limitation provision included in the IDS Policy is valid and enforceable under settled California law.[4] Prudential-LMI Com. Ins. v. Superior Court, 51 Cal.3d 674, 683 (1990) (recognizing validity of a contractual one-year limitation period, and quoting Fageol T. & C. Co. v. Pacific Indemnity Co., 18 Cal.2d 748, 753 (1941) as follows: "[s]uch a covenant shortening the period of limitations is a valid provision of an insurance contract and cannot be ignored with impunity as long as the limitation is not so unreasonable as to show imposition or undue advantage. One year was not an unfair period of limitation."); Gaylord v. Nationwide Mut. Ins. Co., 776 F.Supp.2d 1101, 114 (E.D. Cal. 2011) (noting that contractual "one-year limitations periods have been found valid" in the property insurance contract context.)

The one-year suit limitation bars both contract and tort actions not filed within the limitations period if the claim for relief is "on the policy," meaning it seeks "to recover policy benefits or [is] grounded upon a failure to pay policy benefits." Shugerman v. Allstate Ins. Co., 594 F.Supp.2d 1131, 1135 (C.D. Cal. 2009); Brafman v. Nationwide Mut. Ins. Co., 2011 WL 5299280, at *3 (E.D. Cal. Nov. 2, 2011). "Under California law, the one-year limitations period begins to run at the time of the inception of the loss, which is 'that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered.'" Campanelli v. Allstate Ins.

---

[4] "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Ctr. for Humans., Inc., 518 U.S. 415, 427 (1996).

1 | Co., 322 F.3d 1086, 1094 (9th Cir. 2003) (quoting Prudential–LMI Commercial Ins. v. Superior
2 | Court, 51 Cal.3d 674, 274 (1990)).

3 | The one-year contractual limitations period "is tolled from the time the insured gives notice of the claim to the insurance company until the time the insurer formally denies the claim in writing." Gaylord, 776 F. Supp. 2d at 1114; Prudential, 51 Cal.3d at 687. The denial must be "unequivocal." Id. An insurer makes an "unequivocal denial" by informing the insured that no payments, or further payments, will be made on the insured's claim. Migliore v. Mid-Century Ins. Co., 97 Cal.App.4th 592, 605 (2002) ("no further benefits will be provided beyond those previously paid" was unequivocal denial even though the words "deny" and "denial" were not used). That an insurer "closes" a claim instead of "denying" a claim is "a distinction without a difference for purposes of the 12-month limitations period." Rains v. Allstate Ins. Co., 2018 WL 3357482, n.3 (C.D. Cal. June 7, 2018) (citing Migliore, 97 Cal.App.4th at 605). Further, "neither an invitation to the insured to provide further information nor a statement of willingness to reconsider a decision upon receipt of further pertinent information will render a denial equivocal." Gaylord, 776 F. Supp. 2d at 1114.

Here, plaintiff was admittedly aware of her claims no later than February 5, 2016. Banga Dep. at 65:14-66:2. IDS issued an "unequivocal denial" and closed Banga's claim under the Policy on April 26, 2016. Elias Decl. ¶¶29-30; Claim Notes (Exhibit B) at IDS_PROD_000225. As of that date, IDS denied Banga's claim for damage to her roof and issued payment to Banga for the full amount of Eagle Report's estimate, less Banga's deductible. Id. On April 26, 2016, IDS stated, and Banga understood, that if she refused further inspection, IDS would "consider [her] claim concluded." Id.; Banga Dep., at 100:17-102:19; ECF No. 134-2 at 10. With this understanding, Banga refused to allow IDS to inspect her property, and IDS closed the Claim. Id. Banga filed this lawsuit on January 18, 2018, and it was removed to this court on April 30, 2018. ECF Nos. 1, 1-1 at 4. The time between denial of the claim and filing of the lawsuit well exceeds the one-year contractual limitations period.

Because each of plaintiff's claims in this case are "on the policy," plaintiff's untimely filing bars recovery entirely. The phrase "on the policy" is "broadly construed to include those

claims that are generally grounded in a failure to pay benefits that are due under the policy." Brafman, 2011 WL 5299280 at *3 (quoting Prieto v. State Farm Fire & Cas. Co., 225 Cal.App.3d 1188, 1195 (1990)). "An action seeking damages recoverable under the policy for a risk insured under the policy' is 'on the policy' and covered by the one-year limitations period." Campanelli, 322 F.3d at 1086 (quoting Jang v. State Farm Fire & Cas. Co., 80 Cal.App.4th 1291 (2000)). The fact that an insured seeks damages in addition to those covered by the policy will not render a cause of action "off the policy." Campanelli, 322 F.3d at 1096.

Here, each cause of action in Banga's RTAC is "on the policy" and therefore barred by the contractual limitations period. Magnolia Square Homeowners Ass'n v. Safeco Insurance, 221 Cal.App.3d 1049, 1063 (1990) (where "essence of claims is an attempt to recover damages for failure to provide benefits under subject contract of insurance," claims are "fundamentally [claims] on the policy and [are] thus time barred"). Banga's First Cause of Action (Breach of Contract) specifically alleges that defendants "breached the Policy terms and conditions" by failing to "properly pay [Banga] benefits under the Policy" and seeks payment of money allegedly owed under the IDS Policy. RTAC, at ¶¶50; 52. Banga's Second Cause of Action (Bad Faith) alleges defendants "breached the express and implied terms of the insurance contract by failing to pay the full amount due under the contract and by failing to act reasonably and in good faith in investigating and resolving [Banga's] claim." RTAC, at ¶61. In her Third Cause of Action (Unfair & Unlawful Business Practice), Banga alleges defendants "acted unreasonably by forcing [her] to accept substantially less amount to settle the claim; by misrepresenting to [her] pertinent facts or insurance policy provisions relating to coverage at issue; by misleading [her] as to the applicable statute of limitations; by requiring [her] to settle the claim by Arbitration before filing a lawsuit and then failing to initiate the arbitration process." RTAC, at ¶74. In her Sixth Cause of Action (Intentional/Negligent Infliction of Emotional Distress), Banga alleges IDS "refus[ed] and fail[ed] to perform the duties [IDS] agreed to perform in the Insurance Agreement" and "breached the aforementioned duty by withholding benefits owed to [Banga] under the Insurance Agreement." RTAC, at ¶99. Each of these causes of action are squarely "on the policy."

Banga's Fourth and Fifth Causes of Action, for negligent and intentional misrepresentation respectively, could in theory be considered off policy if they involved extracontractual representations made to Banga before she entered the Policy. However, the RTAC itself makes clear that in this case, these claims are "on the policy." RTAC ¶ 81. In general, these types of claims are "on the policy" where they "seek to recover for damage to [the insured's property] that the [insured] allege[s] should have been covered under their respective insurance policies." Campanelli, 322 F.3d at 1096. For instance, the complaint in Campanelli alleged that the insurer's misrepresentations involved "the scope, competence and fairness of the investigations into the [insured's] claim for covered loss under the policy." Id. The Ninth Circuit held such claims were "grounded in a failure to pay benefits that are due under the policy" and, therefore, that the one-year limitations period applied. Id. Here, each alleged misrepresentation alleged by Banga involves a "written statement contained in the Policy" or a "written promise in the Policy." RTAC ¶¶ 80, 91. Further, Banga's misrepresentation causes of action each allege defendants owed duties to Banga under the Policy "to refrain from making intentional misrepresentations concerning the Policy benefits coverage under the insurance Policy." RTAC, at ¶¶79, 85.9. These causes of action are clearly "grounded in a failure to pay benefits that are due under" the IDS Policy and barred by the limitations period contained in the Suits Against Us Provision.

As each of the RTAC's causes of action is "on the policy" and Banga filed the lawsuit far beyond the one-year deadline, summary judgment in favor of defendants on all claims is appropriate. Judgment should be entered in favor if defendants and this case should be closed.

## V. Conclusion

Accordingly, for the reasons explained above, IT IS RECOMMENDED that defendants' motions for summary judgment (ECF Nos. 124 and 125) be GRANTED, that judgment be entered in favor of all defendants, and that this case be CLOSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a
2  document should be captioned "Objections to Magistrate Judge's Findings and
3  Recommendations."  Any response to the objections shall be filed with the court and served on all
4  parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file
5  objections within the specified time may waive the right to appeal the District Court's order.
6  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57
7  (9th Cir. 1991).
8      IT IS SO ORDERED.
9  DATED: November 12, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE